NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

DEC 11 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ENYI WANG,

      Petitioner,

  v.

PAMELA BONDI, Attorney General,

      Respondent.

No. 25-884

Agency No.
A205-181-587

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted December 8, 2025[**]
Pasadena, California

Before: M. SMITH, CHRISTEN, and FORREST, Circuit Judges.

Petitioner Enyi Wang, a Chinese citizen, petitions for review of the Board of

Immigration Appeals' (BIA) decision dismissing his appeal of an Immigration

Judge's (IJ) denial of his application for asylum, withholding of removal, and

protection under the Convention Against Torture (CAT). The "substantial evidence"

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

standard governs our review of the BIA's decision. *Garcia-Milian v. Holder*, 755 F.3d 1026, 1031 (9th Cir. 2014) (as amended). Under that standard, we ask whether the BIA's decision is supported by "reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (citation omitted). We may grant the petition only when "the evidence not only supports[] but compels the conclusion" that the BIA's findings and decisions are erroneous. *Plancarte Sauceda v. Garland*, 23 F.4th 824, 831 (9th Cir. 2022) (citation omitted) (as amended). Because Wang has made this showing, we grant his petition.

1. ***Asylum and Withholding.*** To establish eligibility for asylum, the petitioner must "demonstrate a likelihood of 'persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Sharma v. Garland*, 9 F.4th 1052, 1059 (9th Cir. 2021) (quoting 8 U.S.C. § 1101(a)(42)(A)). For withholding of removal, the "petitioner must discharge this burden by a 'clear probability.'" *Id.* at 1059–60 (quoting *Alvarez-Santos v. INS*, 332 F.3d 1245, 1255 (9th Cir. 2003)). "Persecution . . . is an extreme concept that means something considerably more than discrimination or harassment." *Id.* at 1060. The courts evaluate several, non-exhaustive factors "in combination with each other," including "physical violence and resulting serious injuries, frequency of harm, specific threats combined with confrontation, length and quality of detention, harm to family and close friends,

economic deprivation, and general societal turmoil." *Id.* at 1061–63. Additionally, "[t]he source of the persecution must be the government or forces that the government is unwilling or unable to control." *Singh v. Garland*, 57 F.4th 643, 652 (9th Cir. 2023) (citation omitted).

Here, Wang asserts that he was persecuted because of political activity: protesting the Chinese government's seizure of his village's farmland for what he and his fellow villagers believed to be unfair compensation. He presented evidence, which the agency credited, establishing that after raising his objections to the Chinese authorities on behalf of his village, he was arrested, beaten by police, and detained for several days. The BIA's holding that Wang failed to establish persecution conflicts with *Guo v. Sessions*, 897 F.3d 1208 (9th Cir. 2018), wherein the petitioner suffered the same treatment. *See id.* at 1211. And both here and in *Guo*, the petitioner was released only after promising not to continue engaging in protected activity and to report to the police station for weekly monitoring. *Id.* Thus, the agency's decision is not supported by substantial evidence.[1]

Wang's release conditions and monitoring here differ from those found not to

---

[1]The Ninth Circuit has not resolved whether substantial-evidence or de novo review applies to the question of whether particular acts constitute persecution. *See Singh*, 57 F.4th at 651–52. The Supreme Court has granted certiorari to answer this question. *See Urias-Orellana v. Bondi*, 145 S.Ct. 2842 (2025) (mem.). We need not await the decision in *Urias-Orellana*, however, because the BIA's decision does not withstand even the more deferential substantial-evidence standard.

amount to persecution in *Gu v. Gonzales*, 454 F.3d 1014 (9th Cir. 2006), because in that case, "after four or five visits, the police lost interest and no longer required [the petitioner] to report." *Id.* at 1018. Here, the police have maintained their interest in Wang, continuing to inquire about his whereabouts as recently as a month before his hearing before the IJ (and almost eight years after he fled China), and they imposed a fine on his wife when he failed to appear after fleeing China. This record does not demonstrate that Wang experienced "a single, isolated encounter with the authorities." *Id.* at 1020. Rather, it shows that "his persecution was ongoing." *Guo*, 897 F.3d at 1216 (distinguishing *Gu*). In sum, Wang was detained and beaten on account of his political activity, released only when he promised to cease his political activity, and the police have maintained an interest in him in the years since his arrest. That treatment amounts to persecution. *See id.* at 1217.

Because Wang has shown that he suffered past persecution, he is entitled to the presumption of "a well-founded fear of future persecution." *Id.* at 1213 (citation modified). Thus, we grant the petition and remand for further proceedings on Wang's asylum and withholding of removal claims to give the Government the opportunity to rebut the presumption. *See id.* at 1217.

**2.** ***CAT Protection.*** "To qualify for CAT protection, a petitioner must show that it is 'more likely than not he or she would be tortured if removed to the proposed country of removal.'" *Sharma*, 9 F.4th at 1067 (quoting 8 C.F.R.

§ 208.16(c)(2)). While substantial evidence supports the BIA's determination that Wang did not suffer past torture, *cf. Fon v. Garland*, 34 F.4th 810, 814–16 (9th Cir. 2022), it does not support the determination that he failed to show a likelihood of future torture if he is returned to China because the agency failed to consider relevant evidence. *See Singh*, 57 F.4th at 659; *Parada v. Sessions*, 902 F.3d 901, 914–15 (9th Cir. 2018) ("CAT's implementing regulations explicitly require the agency to consider 'all evidence relevant to the possibility of future torture,' and we have repeatedly reversed where the agency has failed to do so.")

The BIA did not appropriately consider Wang's evidence indicating that he is likely to be arrested and imprisoned if he returns to China. Wang testified that, after his departure, his wife and mother informed him that one of their fellow villagers, with whom Wang was arrested initially, was arrested and sentenced to three years in prison for failing to report, leading the police to believe he intended to flee the country. As already referenced, Wang also testified that the police have sought information about his whereabouts from his wife as recently as mid-2019. *See Haile v. Holder*, 658 F.3d 1122, 1132 (9th Cir. 2011) (noting the significance of continued interest in the petitioner's activities years after she fled).

The Country Conditions Report that Wang presented further explain that, despite torture being illegal in China, many prisoners are beaten or otherwise tortured by prison guards. The BIA acknowledged the Report, but found that

"evidence that some torture is inflicted upon some people in custody in China . . . does not meet the high threshold" required for CAT protection. In doing so, the agency did not address evidence from the Report that prison authorities frequently "singled out political and religious dissidents for particularly harsh treatment." Because the Chinese government considers Wang a political dissident—evidenced by interrogating him about "anti-government activity"—the agency should have considered this evidence. *See Parada*, 901 F.3d at 914–16; *cf. also Guan v. Barr*, 925 F.3d 1022, 1034–35 ("The country reports did not contain generalized statements that torture occurs in China. Rather, they stated that members of particular religious groups, including Christians, are subject to torture.").

Taken together, the police's continued interest in Wang's family and his whereabouts, which was not mentioned by either agency adjudicator when discussing Petitioner's CAT claim, and the Country Conditions Report demonstrate that the agency's determination that Wang is unlikely to suffer torture if he returns to China is not supported by substantial evidence. Accordingly, we also remand for further proceedings on this claim.

**PETITION GRANTED; REMANDED** for further proceedings.

25-884