# United States Court of Appeals
## For the First Circuit

No. 08-2422

MACKENDY GOURDET,

Petitioner,

v.

ERIC H. HOLDER,[*]

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Ebel[**] and Lipez, Circuit Judges.

Jeffrey B. Rubin on brief for petitioner.
Stefanie Notarino Hennes, Trial Attorney, Office of Immigration Litigation, Michael F. Hertz, Acting Assistant Attorney General, Civil Division, and John W. Blakeley, Assistant Director, Office of Immigration Litigation, on brief for respondent.

November 4, 2009

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Eric H. Holder, Jr. has been substituted for former Attorney General Michael B. Mukasey as the respondent.

[**] Of the Tenth Circuit, sitting by designation.

**LIPEZ, Circuit Judge**. Mackendy Gourdet, a native and citizen of Haiti, seeks review of a decision of the Board of Immigration Appeals (BIA) denying his application for relief from removal under the Convention Against Torture (CAT). In addressing claims for CAT relief based on substandard prison conditions, we have distinguished between generally substandard prison conditions, such as deprivation of adequate space, food, water, sanitation or exercise, and acts of mistreatment of individual prisoners by prison officials, such as "burning with cigarettes and use of electric shock." See Settenda v. Ashcroft, 377 F.3d 89, 96 (1st Cir. 2004) (citing In re J-E-, 23 I. & N. Dec. 291, 2002 WL 481156 (BIA 2002) (en banc)). Gourdet claims that he is entitled to CAT relief based on circumstances falling into each of these two categories, and therefore argues that he has met his burden under the CAT of proving that he "is more likely than not to be tortured if removed to the proposed country of removal." Id. at 94 (internal quotation marks and citation omitted).

Relying on settled precedent, we conclude that the general detention conditions in Haiti, although grossly inadequate, are not sufficiently severe to rise to the level of torture. We likewise conclude that the acts of mistreatment that Gourdet will likely be subjected to in detention, such as rough treatment by police officers, do not amount to torture. Finally, we conclude that we lack jurisdiction to address Gourdet's remaining

-2-

contentions that he has met his burden of proving that torture of criminal deportees in Haiti is widespread and that he is more likely to be singled out for mistreatment by Haitian authorities because of his personal characteristics. Therefore, we deny the petition.

## I.

Gourdet entered the United States at some time prior to 2002 and was granted legal permanent resident status on January 2, 2002. On February 2, 2007, federal authorities filed a Notice to Appear charging Gourdet with removability under section 237(a)(2)(B)(i) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(B)(i), as a person convicted of a controlled substance violation. Gourdet conceded removability and applied for asylum, withholding of removal, CAT relief, and voluntary departure.

At a merits hearing before an Immigration Judge (IJ), Gourdet offered his own testimony, the testimony of his mother, and the testimony of Michelle Karshan, an expert on detention conditions in Haiti. Karshan testified as to general prison conditions faced by criminal detainees in Haiti, as well as physical abuse inflicted on individual detainees by prison officials. Gourdet also submitted documentary evidence of current country conditions in Haiti. At the close of the hearing, the IJ issued a decision finding the proffered testimony credible, but

denying Gourdet's applications for relief.

The IJ made the following findings of fact. Upon Gourdet's return to Haiti, he will be held as a criminal deportee for a period of two to four weeks in a police holding cell. The conditions in this cell "will be horrible." He will share a ten-by-ten foot cell with up to 30 men, both deportees and local detainees, and the cell will have no toilet, sink, mattress or bed. The cell will be hot and unsanitary and there will be no apparent ventilation. No food or medical care will be provided, and food "may be deliberately withheld to make conditions harsh."

In addition to these abysmal prison conditions, the IJ found that individual detainees may be subjected to acts of mistreatment by police officers. Local detainees[1] held in the cell may be removed for "torture . . . of an unspecified nature," and other detainees will be made aware of this practice. Gourdet "may also be struck by police officers, initially as a matter of course, and possibly later for other reasons such as not speaking Creole," and other detainees may be directed to strike Gourdet. The purpose of this physical abuse "will be to extort money from the respondent (and/or other criminal deportees)." The IJ found that although criminal deportees have died in detention, there was no evidence that Gourdet would be killed deliberately or as the result of

---

[1] The IJ distinguished local detainees from criminal deportees, such as Gourdet.

torture.

Based on these findings of fact, the IJ denied Gourdet's application for CAT relief, concluding that he failed to establish the first and second elements of torture under the CAT.[2]  "For an act to constitute torture it must be: (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for a proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions."  Elien v. Ashcroft, 364 F.3d 392, 398 (1st Cir. 2004) (quoting In re J-E-, 23 I. & N. Dec. at 297).

Examining these elements, the IJ first found that Gourdet failed to establish an "act causing severe physical or mental pain or suffering."  Relying on the BIA's decision in In re J-E-, 23 I. & N. Dec. 291, she determined that although Gourdet would "suffer, perhaps both physically and mentally," upon removal to Haiti, the substandard prison conditions in Haiti did not constitute torture under the CAT.  She further concluded that "[a]s to the respondent being struck by police officers and/or other detainees or inmates in the police holding cells, the Court is compelled to find that such physical abuse falls in the category of a 'lesser form of

_____

[2] The IJ also denied Gourdet's applications for asylum, withholding of removal, and voluntary departure.  Gourdet's petition does not challenge the disposition of these claims, and therefore we do not discuss them.

cruel, inhuman, or degrading treatment or punishment,' as opposed to an act which causes severe pain or suffering, physical or mental."

Second, the IJ found that Gourdet failed to establish that the alleged acts were "specifically intended to inflict severe physical or mental pain or suffering." She explained that there was no evidence that "the act of hitting the respondent, or the act of providing him with substandard prison or holding cell conditions would be specifically intended to inflict severe physical or mental pain or suffering." Instead, she pointed to expert witness Karshan's testimony that these acts "would be intended to extort payments of $3,000 to $5,000 from the respondent, and/or possibly, to punish him for acts that he committed in the United States." The IJ also found that Gourdet had not demonstrated that he would be personally targeted for acts of mistreatment that would constitute torture.

On appeal, the BIA rejected Gourdet's CAT claim for substantially the same reasons, stating:

> We find no reason to disturb the Immigration Judge's finding that the respondent failed to prove that he more likely than not would be tortured upon his return to Haiti. 8 C.F.R. § 1003.1(d)(3). Although the respondent provided general evidence of horrible prison and detention conditions, he did not show that it is more likely than not that he will be tortured. 8 C.F.R. § 1208.16(c)(2). We rejected a similar claim by a Haitian citizen who asserted that he would be tortured if returned to Haiti because, as a repatriated

-6-

convict, he would be subjected to indefinite detention and imprisonment in the Haitian prison system. See Matter of J-E-, 23 I&N Dec. 291 (BIA 2002) (relied upon by Elien v. Ashcroft, 364 F.3d 392 (1st Cir. 2004)). There, notwithstanding evidence of gross inadequacies in Haitian prisons, we concluded that indefinite detention and severely substandard prison conditions did not constitute torture under CAT, even though they might very well be considered "cruel, inhuman, or degrading punishment or treatment." Id. at 301, 304.

The BIA further held that Gourdet had not established that he would be specifically targeted for any mistreatment by Haitian authorities that would constitute torture. He had not shown that he would be subjected to the torture methods used on local detainees, and had not shown any unique personal characteristics that would cause him to be singled out for torture.

Gourdet filed this timely petition for review.

**II.**

First, Gourdet contends that upon return to Haiti, he will be detained as a criminal deportee and subjected to substandard detention conditions, and these substandard detention conditions constitute torture under the CAT. Second, he argues that, above and beyond the generally substandard detention conditions in Haiti, he will suffer acts of mistreatment by Haitian authorities that rise to the level of torture. After discussing the applicable standard of review, we address each contention in turn.

## A. Standard of Review

We have limited jurisdiction to review Gourdet's claim. Under the INA, as amended by the REAL ID Act of 2005, "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense," including a controlled substance offense. 8 U.S.C. § 1252(a)(2)(C); Silva v. Gonzales, 455 F.3d 26, 27-28 (1st Cir. 2006). The statute carves out an exception to this jurisdictional bar, permitting judicial review of a removal order "to the extent that an alien raises legal or constitutional questions." Silva, 455 F.3d at 28; see 8 U.S.C. § 1252(a)(2)(D).

The government has agreed that we have jurisdiction under the REAL ID Act, but only to review the issue of whether an undisputed or adjudicated course of conduct constitutes "torture" because this issue raises a question of law. Singh v. U.S. Att'y Gen., 561 F.3d 1275, 1280 (11th Cir. 2009). In a criminal alien case, "we may not review the administrative fact findings of the IJ or the BIA as to the sufficiency of the alien's evidence and the likelihood that the alien will be tortured if returned to the country in question." Id.; see also Conteh v. Gonzales, 461 F.3d 46, 63 (1st Cir. 2006) (explaining that we lack jurisdiction to review the factual findings underlying the removal order in a criminal alien case and "[t]his proscription extends to review of the BIA's factual findings as to credibility, evidentiary weight,

and satisfaction of a correctly framed burden of proof"). Therefore, we review only whether the undisputed and adjudicated course of conduct described by the BIA amounts to torture. We review legal questions de novo, "with appropriate deference to the agency's interpretation of the underlying statute in accordance with administrative law principles." Manzoor v. U.S. Dep't of Justice, 254 F.3d 342, 346 (1st Cir. 2001) (quotation marks and citation omitted).

Ordinarily, we review the decision of the BIA and not that of the IJ. Settenda, 377 F.3d at 92-93. Where the BIA deferred to or adopted the IJ's reasoning, however, we review those portions of the IJ's decision as part of the BIA's final decision. Hernandez-Barrera v. Ashcroft, 373 F.3d 9, 20 (1st Cir. 2004).

## B. Substandard Detention Conditions

Gourdet contends that the generally substandard detention conditions in Haiti amount to torture under the CAT. He argues that the BIA erred in concluding that the detention conditions do not satisfy the first and second elements of torture under the CAT in that (1) they are not acts causing severe physical or mental pain or suffering and (2) they are not intentionally inflicted. See Elien, 364 F.3d at 398. We conclude that the BIA did not err in finding that Haiti's substandard prison conditions are not acts causing severe physical or mental pain or suffering. Because this is an independent basis for denying Gourdet's CAT claim, we do not

address Gourdet's contention that he has established that the substandard prison conditions are intentionally inflicted on detainees by Haitian authorities.[3]

In this case, both the IJ and the BIA relied on In re J-E- to conclude that Gourdet failed to establish the first element of his CAT claim; that is, he did not establish acts causing severe physical or mental pain or suffering. They held that the prison conditions described by Gourdet, although "horrible" and "gross[ly] inadequa[te]," did not rise to the level of torture.

In In re J-E-, the BIA rejected a claim nearly identical to Gourdet's, holding that Haiti's indefinite detention of criminal deportees, coupled with substandard prison conditions consisting of overcrowding and deprivation of adequate food, water, medical care, sanitation, and exercise, did not amount to torture. In re J-E-, 23 I. & N. Dec. at 301, 304. The BIA first discussed the definition of torture under the CAT. The BIA explained that "[t]he severity of the pain or suffering inflicted is a distinguishing characteristic of torture." Id. at 295. Under the applicable regulations, torture "must cause severe pain or suffering, physical

---

[3] However, we reject Gourdet's argument, relying on an overruled Third Circuit opinion, Lavira v. Att'y Gen., 478 F.3d 158 (3d Cir. 2007), that specific intent to cause severe physical or mental pain or suffering can be established through a showing of indifference or willful blindness to such harm. That is not the law. Pierre v. Att'y Gen., 528 F.3d 180, 189 (3d Cir. 2008) (en banc); Villegas v. Mukasey, 523 F.3d 984, 989 (9th Cir. 2008); Pierre v. Gonzales, 502 F.3d 109, 118 (2d Cir. 2007).

-10-

or mental," and does not include "lesser forms of cruel, inhuman or degrading treatment or punishment."  Id. at 297 (citing 8 C.F.R. § 208.18(a)(1),(2)) (emphasis in original); see also id. at 298 (discussing the court's holding in Ireland v. United Kingdom, 2 Eur. Ct. H.R. 25 (1978), that suspected terrorists who were deprived of sleep, food, and water by the British Army had been subjected to inhuman and degrading treatment, not torture).

The BIA in In re J-E- held that the substandard prison conditions in Haiti did not constitute torture under the CAT.  The BIA found that it was clear that the prison conditions, although substandard, fell within the category of "other acts of cruel, inhuman or degrading punishment or treatment," rather than torture.  Id. at 304.[4]

We have previously deferred to the BIA's determination in In re J-E- that prevailing prison conditions in Haiti do not rise to the level of torture.  See Elien, 364 F.3d at 399 (affirming BIA's denial of motion to reopen petitioner's claim for CAT relief based on Haitian detention policy, because petitioner "made no attempt on appeal to demonstrate in what respect his proffer is qualitatively different than or superior to the In re J-E-

---

[4] The BIA further found that there was no evidence that Haitian authorities intentionally and deliberately created and maintained substandard prison conditions in order to inflict torture.  Instead, the evidence showed that the prison conditions were the result of budgetary and management problems in the country.  Id. at 301.

-11-

record"); see also Settenda, 377 F.3d at 96 (affirming BIA's denial of CAT claim based on Ugandan detention conditions, where the petitioner's case was "on all fours with In re J-E- and Elien").[5] Other circuits have likewise found the BIA's holding in In re J-E- deserving of deference. See, e.g., Pierre v. Gonzales, 502 F.3d 109, 121 (3d Cir. 2007) ("[W]e defer to In re J-E-'s interpretation of 8 C.F.R. § 208.18(a)(5): The failure to maintain standards of diet, hygiene, and living space in prison does not constitute torture under the CAT unless the deficits are sufficiently extreme and are inflicted intentionally rather than as a result of poverty, neglect, or incompetence." (emphasis added)).

Gourdet contends that In re J-E- and its progeny do not govern his case, because these decisions were decided on the basis of the second element of torture under the CAT, specific intent, rather than the first element, severity. He contends that no authority supports the BIA's conclusion in his case that Haitian detention conditions are not sufficiently severe to constitute torture. We disagree. The BIA concluded in In re J-E- that the substandard prison conditions in Haiti, although "abysmal," did not rise to the level of torture. In re J-E-, 23 I. & N. Dec. at 304. Instead, these conditions fell "squarely" within the category of "other acts of cruel, inhuman or degrading treatment or

---

[5] We note that Elien and Settenda were decided prior to the enactment of the REAL ID Act of 2005, and therefore had a broader scope of review.

-12-

punishment." Id. Thus, we read In re J-E- to hold that the substandard prison conditions do not constitute torture both because they are not intentionally inflicted, and because they are not acts causing severe pain or suffering. See id.; see also Settenda, 377 F.3d at 96 (explaining that in In re J-E-, "the BIA concluded that the indefinite detention and severely substandard prison conditions did not constitute torture under the CAT, even though they might very well be considered 'cruel, inhuman, or degrading punishment or treatment.'" (citing In re J-E-, 23 I. & N. Dec. at 301, 304)).

The undisputed, adjudicated facts described by the BIA in this case demonstrate that upon Gourdet's return to Haiti, he will be detained as a criminal deportee and will face overcrowding, unsanitary conditions, and deprivation of food, water and medical care. These detention conditions are not more severe or otherwise different than those described by In re J-E-. See 23 I. & N. Dec. at 293. Therefore, the BIA did not err in relying on In re J-E- to conclude that Haiti's substandard detention conditions do not rise to the level of torture. See Elien, 364 F.3d at 399; Settenda, 377 F.3d at 96.

## C. Acts of Mistreatment

Gourdet further contends that he has established that if returned to Haiti, he will likely be subjected to acts of mistreatment by Haitian authorities that rise to the level of

-13-

torture.

Gourdet points to undisputed evidence that he may be struck by Haitian authorities while in detention. The IJ found that Gourdet "may also be struck by police officers, initially as a matter of course, and possibly later for other reasons such as not speaking Creole," and that other detainees may be directed to strike Gourdet. However, the IJ concluded that "[a]s to the respondent being struck by police officers and/or other detainees or inmates in the police holding cells, the Court is compelled to find that such physical abuse falls in the category of a 'lesser form of cruel, inhuman, or degrading treatment or punishment,' as opposed to an act which causes severe pain or suffering, physical or mental." The IJ did not err in concluding that this kind of rough treatment by police officers is not so severe as to rise to the level of torture. See In re J-E-, 23 I. & N. Dec. at 298 (noting that "rough and deplorable treatment, such as police brutality, does not amount to torture" (emphasis in original)).[6]

The petition for review is denied.

_____

[6] Gourdet also contends that he has met his burden to show that torture of criminal deportees in Haiti is "routine and widespread," and that, because of his personal characteristics, he is more likely to be singled out for mistreatment by Haitian authorities. However, the BIA found that Gourdet provided insufficient evidence on these points. We lack jurisdiction to review these factual findings by the BIA. Conteh, 461 F.3d at 63.

-14-