**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1263**

TECNOCAP, LLC,

        Plaintiff - Appellant,

    v.

UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INUDSTRIAL & SERVICE WORKERS INTERNATIONAL UNION AFL-CIO/CLC, Local Union No. 152M,

        Defendant - Appellee.

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling. John Preston Bailey, District Judge. (5:18-cv-00156-JPB)

Submitted: December 11, 2020              Decided: January 19, 2021

Before WILKINSON, AGEE, and RICHARDSON, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Bradley K. Shafer, MINTZER SAROWITZ ZERIS LEDVA & MEYERS, Wheeling, West Virginia, for Appellant. Maneesh Sharma, Associate General Counsel, UNITED STEEL WORKERS, Pittsburgh, Pennsylvania, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Tecnocap, LLC, ("Tecnocap" or "the Company") appeals from the district court's decision not to vacate an arbitration award and the resulting grant of summary judgment to the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO, CLC Local Union No. 152M ("the Union").[1] In the underlying arbitration proceedings, the arbitrator awarded relief to the Union in a grievance proceeding related to Tecnocap's decision to terminate the employment of an employee covered by the parties' collective bargaining agreement ("CBA"). For the reasons that follow, we affirm the judgment of the district court.

I.

Tecnocap is a West Virginia employer in the business of manufacturing metal bottle and jar lids for non-retail sale. The Company and the Union are parties to the CBA, which governs the terms of employment for covered employees. For example, Article 5 of the CBA prohibits Tecnocap from "summarily discharg[ing]" covered employees, instead requiring that termination of employment be "for just cause." J.A. 15–16. In addition, Article 22 requires both Tecnocap and the Union to abide by "the rules of" the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601–2654 ("FMLA"). J.A. 40.

---

[1] United Steel's predecessor-in-interest is Glass, Molders, Pottery, Plastics, & Allied Workers International Union, AFL-CIO, CLC Local Union 152. The two unions merged after arbitration had begun. For simplicity, the opinion will refer to them both as "the Union" without distinguishing which entity was the pertinent actor throughout the narrative.

2

Lastly, as relevant here, Article 28 provides for a multi-step grievance process and subjects "grievances involving the interpretation or application of express provisions" of the CBA to arbitration. J.A. 43–46.

Separate from the CBA, Tecnocap instituted an attendance program for its employees under which they accrued points for certain absences from work and were subject to different disciplinary procedures upon accruing a certain number of points. For example, once an employee accrued six points under the program, he received a verbal warning; seven points warranted a written warning; eight points prompted a three-day suspension without pay; and nine points triggered a suspension pending termination of employment. Employees accrued points only for designated categories of absences and did not receive points for absences covered by the FMLA.

Sam Hall, an employee at Tecnocap's manufacturing plant in Glen Dale, West Virginia, was subject to the terms of both the CBA and the attendance program. On March 4, 2016, Hall was absent from work for medical reasons. Tecnocap counted this absence as Hall's ninth point in the attendance program. Although Tecnocap provided Hall with a packet of paperwork that allowed him to request that his March 4 absence be classified as FMLA leave, Hall failed to return the necessary papers within the designated fifteen-day submission period. Accordingly, Tecnocap denied as untimely Hall's late-filed request to count this absence as FMLA leave and, after Hall's suspension and a hearing, terminated his employment.

The Union filed a grievance protesting Hall's termination of employment, which eventually proceeded through arbitration.[2] At the outset, the arbitrator determined that the grievance was arbitrable, rejecting Tecnocap's argument that the grievance was untimely at two steps of the process, such that the grievance should be denied or dismissed on this procedural ground. The arbitrator cited three reasons for this conclusion. First, it found that the parties' past conduct showed inattentiveness to timelines, giving rise to a mutual understanding that the CBA's stricter deadlines need not be followed. Second, it found that the parties ignored the deadlines in the course of processing Hall's grievance by, for example, not timely complaining of an untimely submission and instead dealing with the substantive concerns as the grievance went through each step of the process until arbitration. Third, it relied on the arbitration principle that doubts with respect to procedural arbitrability issues should be resolved against forfeiture.

After concluding that the grievance was arbitrable, the arbitrator held a hearing on the merits and issued its decision concluding that Tecnocap did not have just cause to terminate Hall's employment because it improperly assessed him with a ninth point following his March 4 absence. According to the arbitrator's reasoning, although Hall was aware of the fifteen-day requirement for submitting the FMLA paperwork, Tecnocap

---

[2] Tecnocap initially refused to proceed to arbitration, so the Union filed an action in the district court seeking a declaratory judgment that Tecnocap was obliged to arbitrate the grievance. In September 2017, the district court granted the Union's motion for summary judgment and directed the parties to proceed to arbitration. *Glass, Molders, Pottery, Plastics, & Allied Workers Int'l Union v. Tecnocap LLC*, No. 5:17-CV-6, 2017 WL 3908913 (N.D.W. Va. Sept. 6, 2017).

had failed to meet its obligation to advise him of his rights and obligations under the FMLA as to the consequences of failing to submit the FMLA paperwork in a timely manner. Further, the arbitrator determined that Hall had made a diligent and good faith effort to return his FMLA paperwork, and the late submission arose due to his doctor's delay and was not Hall's fault. Lastly, the arbitrator decided that Hall had no reason to believe he would not be approved for FMLA leave given the circumstances surrounding the request and his employer's past approval of similar requests. In light of these findings, the arbitrator concluded that Tecnocap should not have assessed Hall a ninth point and directed that Hall be reinstated to employment with eight points on his attendance record and receive compensation for wages and benefits lost.

Tecnocap filed an action under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, seeking vacatur of the arbitrator's award, and the Union filed an action under the same provision seeking an order to enforce the arbitrator's decision, which it alleged Tecnocap had refused to follow. Both parties moved for summary judgment.

The district court granted summary judgment to the Union. *Tecnocap, LLC v. United Steel Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, No. 5:18-CV-156, 2019 WL 10097563 (N.D.W. Va. Feb. 13, 2019). At the outset, the court concluded that Tecnocap had "conceded the procedural argument [about the arbitrator's determination that the grievance was arbitrable] and is solely arguing against the substance of the award." *Id.* at *4. On that substantive issue, the court held that Tecnocap had not come forward with evidence that would warrant overturning the

5

arbitrator's award. In particular, it observed that Tecnocap failed to demonstrate that the award was the product of the arbitrator's bias, ignored the evidence in favor of her own brand of "industrial justice," or altered the language of the CBA.

Tecnocap moved for reconsideration under Federal Rule of Procedure 60, arguing that the district court had misconstrued its position as to the procedural issue and that it had not intended to abandon that challenge. It also asked the court to correct its order to reflect that fact and to rule on the arbitrator's determination that the dispute was arbitrable and not barred as a result of untimely grievance submissions. The district court denied Rule 60 relief, but reviewed the arbitrator's timeliness determination and concluded that the arbitrator acted within the bounds of her discretion in construing the CBA to permit the parties to effectively waive the deadlines for the various stages of the grievance proceedings. *Tecnocap, LLC v. United Steel Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, No. 5:18-CV-156, 2019 WL 10097564 (N.D.W. Va. Feb. 20, 2019). The court again granted summary judgment to the Union and ordered that the arbitration award be enforced.

Tecnocap noted a timely appeal, and we have jurisdiction under 28 U.S.C. § 1291.

## II.

### A.

We review de novo the district court's grant of summary judgment. *Jacobs v. N.C. Admin. Office of the Cts.*, 780 F.3d 562, 565 n.1 (4th Cir. 2015). "A district court 'shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law.'" *Id.* at 568 (quoting Fed. R. Civ. P. 56(a)). When, as here, "the district court's grant of summary judgment disposed of cross-motions for summary judgment, we consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Defs. of Wildlife v. N.C. Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014).[3]

We review for abuse of discretion the district court's denial of a Rule 60(b) motion for reconsideration. *Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d 295, 299 (4th Cir. 2017). "[A] district court abuses its discretion only where it has acted arbitrarily or irrationally, has failed to consider judicially recognized factors constraining its exercise of discretion, or when it has relied on erroneous factual or legal premises." *United States v. Welsh*, 879 F.3d 530, 536 (4th Cir. 2018).

As we consider each of the district court's decisions, we must also bear in mind the "very limited" scope of a federal court's review of an arbitrator's award. *Island Creek Coal Co. v. Dist. 28, United Mine Workers of Am.*, 29 F.3d 126, 129 (4th Cir. 1994). Courts "must determine only whether the arbitrator did [her] job—not whether [s]he did it well, correctly, or reasonably, but simply whether [s]he did it." *PPG Indus., Inc. v. Int'l Chem. Workers Union Council of the United Food & Commercial Workers*, 587 F.3d

---

[3] We have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

7

648, 652 (4th Cir. 2009). Whether an arbitrator acts within the scope of her authority is a question of law that we review de novo. *Id.*

Long-settled precedent obliges an arbitrator's award settling a dispute concerning the "interpretation or application of a labor agreement" to "draw its essence from the contract and []not simply reflect the arbitrator's own notions of industrial justice." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). "The requirement that the award draw its essence from the parties' agreement means that the arbitrator may not ignore the plain language of the contract." *U.S. Postal Serv. v. Am. Postal Workers Union*, 204 F.3d 523, 527 (4th Cir. 2000). But, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of h[er] authority, that a court is convinced [s]he committed a serious error does not suffice to overturn h[er] decision." *Misco*, 484 U.S. at 38; *accord U.S. Postal Serv.*, 204 F.3d at 527. Critically, we are not to "reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Dist. 17, United Mine Workers of Am. v. Island Creek Coal Co.*, 179 F.3d 133, 137 (4th Cir. 1999) (quoting *Misco*, 484 U.S. at 36). Only when "the arbitrator's words manifest an infidelity to" her obligation to apply the collective bargaining agreement do courts have "no choice but to refuse enforcement of the award." *U.S. Postal Serv.*, 204 F.3d at 527.

B.

While Tecnocap raises several challenges to the district court's judgment, its core argument is that the court should have concluded that the arbitrator's award did not draw its essence from the CBA and therefore should have been vacated. First, Tecnocap

8

contests the arbitrator's procedural ruling that the parties waived enforceability of the grievance deadlines. It asserts that the plain language of the CBA does not provide for a waiver of its deadlines and there's no evidence that the parties agreed in writing to a waiver. Further, the Company faults the arbitrator for relying on "completely irrelevant" findings as to its grievance-proceeding practices. Opening Br. 13. Second, Tecnocap argues that the arbitrator's merits determination is unreasonable because the record showed that Hall had previously taken FMLA absences and did not dispute being given a packet stating that he had a fifteen-day deadline to submit the paperwork for his March 4 absence to be certified as FMLA leave. Because it's undisputed that Hall failed to comply with these instructions, Tecnocap contends that it acted reasonably in assessing him the ninth point that automatically triggered his suspension and termination of employment. As such, the Company argues it had just cause to terminate Hall's employment. For these reasons, Tecnocap contends the Court should reverse the district court's decisions upholding the arbitrator's award and remand to the district court for vacatur of the award.

As this recitation of Tecnocap's arguments reveals, it wanted the district court— and now us—to vacate the arbitrator's award because it disagrees with the result of a course it agreed to and which was designed to *avoid* prolonged litigation. *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007) (observing that the purpose of arbitration is "the quick resolution of disputes and the avoidance of the expense and delay associated with litigation"). This genre of almost-reflexive appeal of arbitration awards seems to be an increasingly common course, leading to arbitration no longer being treated as an alternative to litigation, but as its precursor. Certainly,

litigation remains available to the parties, but as the foregoing recitation of the standards circumscribing our review unequivocally provide, the decision to seek judicial review of an unfavorable award will be futile in most cases. And that is precisely how the arbitration framework was designed to operate: "the scope of judicial review of an arbitrator's decision is 'among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all.'" *Id.*

Here, Tecnocap has presented us with nothing more than an ordinary disagreement with the outcome based on its preferred application of the CBA to the underlying facts. As such, we readily affirm the district court's award of summary judgment to the Union in which it declined to vacate the arbitrator's award. Our reasoning need only briefly address the issues presented.

We first reject Tecnocap's contention that the arbitrator violated her role and exceeded her authority in determining that the timeliness under the grievance procedure had been waived and that the case was therefore not subject to arbitration. The CBA delegates to the arbitrator authority over "grievances involving the interpretation or application of express provisions of" the CBA. J.A. 45. One of those express provisions is Article 5, which limits Tecnocap's ability to discharge covered employees to situations where the discharge is for just cause. Whether Tecnocap had just cause to terminate Hall is the very subject of the grievance the Union filed on his behalf, making arbitration the appropriate course. Further, Tecnocap invoked CBA Article 27, which discusses the grievance procedure, as a defense to the Union's grievance. This, too, required "interpretation or application of the express provisions of" the CBA, J.A. 45, and thus is a

matter subject to arbitration. For that matter, even if Tecnocap's defense did not itself fall within the plain language of the CBA's arbitration provision, the Supreme Court—and we—have long recognized that procedural questions that arise out of a grievance properly submitted to arbitration are also subject to arbitration. *See Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997) ("[O]nce it is determined that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964))); *see also Del Webb Cmtys., Inc. v. Carlson*, 817 F.3d 867, 873–74 (4th Cir. 2016) (noting that threshold "[p]rocedural questions arise once the obligation to arbitrate a matter is established, and may include such issues as the application of statutes of limitations, notice requirements, laches, and estoppel," and that the Supreme Court has explained that these are issues for the arbitrator to decide). In sum, both the Union's grievance and Tecnocap's defense are plainly matters falling within the scope of the arbitrator's authority.

Further, given the CBA's silence as to whether a grievant's failure to comply with the steps of the grievance procedure in a timely matter mandates dismissal of the grievance in arbitration, the arbitrator did not violate, disregard, or rewrite the plain language of the CBA. *See PPG Indus.*, 587 F.3d at 653 (concluding that, in view of the "failure of the CBA to address" a particular matter, the arbitrator did not ignore the plain language of the CBA in addressing the matter "through interpretation").

11

As for Tecnocap's argument that the arbitrator reached the wrong interpretation when deciding the procedural matter of timeliness of arbitrability, we have "no warrant to determine the correctness of the arbitrator's award. If an arbitrator 'even arguably' construes a CBA, a court must uphold the resulting award." *Id.* The arbitrator's determination "stands in stark contrast to the few modern instances in which [this Court] ha[s] held that an arbitrator crossed the line from construing a contract to imposing his own notions of fairness." *Id.*; *see also Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 235 (4th Cir. 2006) ("An arbitration award fails to draw its essence from the agreement only when the result is not rationally inferable from the contract."). Tecnocap's arguments challenging that decision thus fail.[4]

Lastly, Tecnocap argues that the arbitrator's merits decision was "[i]mproper" because she "rewrote the rules" to craft an exception to the terms of the attendance policy. Opening Br. 15, 17. Tecnocap summarily asserts that the arbitrator violated her duty to arguably construe or apply the CBA and therefore exceeded her authority. We disagree.

---

[4] Tecnocap also claims that the arbitrator improperly relied on Union Exhibit 2 to reach her decision. That exhibit has not been made part of the joint appendix in this appeal. Accordingly, the argument does not comport with Federal Rule of Appellate Procedure 28(a)(8)(A), which requires appellants to cite the authorities and parts of the record on which it relies, and Rule 30(a), which tasks appellants with preparing an appendix containing the relevant parts of the record created below, including any "parts of the record to which the parties wish to direct the court's attention." As such, this argument has been abandoned. *See EEOC v. Md. Ins. Admin.*, 879 F.3d 114, 122 n.10 (4th Cir. 2018) (declining to address argument abandoned on appeal through failure to comply with the federal appellate rules).

The CBA plainly delegated authority to the arbitrator to adjudicate grievances involving the interpretation or application of the express provisions of the CBA. Upon being delegated that authority, the arbitrator had authority to review whether Tecnocap fulfilled its obligation under Article 22 to comply with the FMLA and whether the termination of Hall's employment comported with Article 5's "just cause" limitation. The arbitrator's decision that the answer to both queries was "no" was a clear exercise in applying these express provisions. Tecnocap points to no clearly expressed limitation in the CBA that prevented the arbitrator from making her decision. The merits determination thus drew its "essence" from the CBA, and Tecnocap's challenge to the correctness of that decision is not a basis for overturning the award or the district court's orders upholding it. *See PPG Indus.*, 587 F.3d at 653.

III.

Because Tecnocap has not established that the district court committed reversible error in granting the Union's motion for summary judgment and denying Tecnocap's, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.

*AFFIRMED*