**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

STEPHEN TAMUFOR FON,
*Petitioner*,

v.

MERRICK B. GARLAND, Attorney General,
*Respondent.*

No. 20-73166

Agency No.
A203-679-900

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted December 7, 2021[*]
San Francisco, California

Filed May 18, 2022

Before: Susan P. Graber and Daniel P. Collins, Circuit
Judges, and Jennifer Choe-Groves,[**] Judge.

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Jennifer Choe-Groves, Judge for the United States
Court of International Trade, sitting by designation.

Opinion by Judge Graber;
Concurrence by Judge Graber;
Concurrence by Judge Collins;
Partial Concurrence and Partial Dissent by
Judge Choe-Groves

### SUMMARY[***]

### Immigration

Granting in part and denying in part Stephen Tamufor Fon's petition for review of a decision of the Board of Immigration Appeals, and remanding, the panel held that: (1) the record compelled a finding of past persecution; (2) the agency's flawed reasoning as to nexus precluded meaningful review of that determination; and (3) substantial evidence supported the denial of relief under the Convention Against Torture.

While tending to the wounds of a separatist fighter at a local hospital, Cameroonian soldiers punched Fon, attacked him with a knife (requiring him to seek medical attention and leaving a three-inch scar), and threatened to kill him if they ever caught him treating separatists again. Although Fon did not return to his job at the hospital, he continued treating separatist fighters at his home. Cameroonian soldiers later went looking for Fon and ransacked his home. The panel held that the harm Fon suffered, including the physical injury, the specific death threats connected to the physical

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

harm, and evidence of the country's political and societal turmoil, compelled the finding of past persecution.

The agency concluded that Fon failed to establish a nexus to a protected ground for two reasons: (1) because he had not provided any declarations from coworkers or family members regarding what happened to him in Cameroon; and (2) because he had not testified as to what happened to a hospital coworker who helped Fon treat the wounded separatist. The panel held that the first reason was invalid because the immigration judge failed to give Fon advance notice of what additional corroborating evidence was required, and an opportunity to produce it, or to explain why it was not available. The panel wrote that the IJ's second reason was vague, because it was not directly responsive to Fon's argument that, due to the medical assistance he provided, Cameroonian soldiers perceived him as working with the opposition. The panel wrote that it also was not clear whether this reason rested on the flawed findings of fact concerning past persecution or whether this reason (like the first one) faulted Fon for not providing corroborative evidence. In light of these ambiguities, the panel concluded that it could not conduct a meaningful review of the agency's nexus determination, and it remanded for a clear explanation.

The panel held that substantial evidence supported the denial of CAT relief because Fon did not suffer past torture, and the record contained no evidence of an individualized future risk of torture.

Concurring, Judge Graber wrote separately to discuss this circuit's standard, and to note a circuit split concerning the proper standard to use, when the court reviews the Board's determination that a particular set of facts does or

does not rise to the level of persecution. Judge Graber wrote that this circuit has found a middle way by recognizing that this is a mixed question of law and fact, and that although at first glance there appears to be some inconsistency in this circuit's precedent, in her view, no true inconsistency exists. Judge Graber explained that not all mixed questions are alike, and that the applicable standard depends on whether answering the mixed question entails primarily legal or factual work. Judge Graber wrote that determining whether an applicant's harm crosses the persecution threshold usually involves very little legal work, rather it requires measuring the severity of the alleged harms that the applicant has suffered, looking at the cumulative effect of all the incidents, and comparing the facts of the applicant's case with those of similar cases. For that reason, the substantial evidence standard usually applies. However, Judge Graber wrote that in rare cases, answering the mixed question entails very little factual work, such as cases involving the agency's evidentiary rules for showing past persecution, or the legal nature or significance of the harm suffered, in which case de novo review applies. Although in Judge Graber's view this circuit's law is consistent, and more nuanced than that of other circuits applying only substantial evidence or de novo review to all cases, she shares Judge Collins's view that Supreme Court guidance on this important, recurring topic would be welcome.

Concurring, Judge Collins agreed that the record compelled the conclusion that Fon suffered past persecution. Writing separately to respond to Judge Graber's concurrence, Judge Collins stated that Judge Graber made a number of good points in favor of her position that, except in rare cases, substantial evidence is the correct standard for assessing whether a petitioner's abuse rises to the level of past persecution. However, in Judge Collins's view, the

question is actually quite a bit more complicated than Judge Graber's concurrence suggests, and overlooks several significant complicating considerations.

First, Judge Collins wrote that Judge Graber's proposed solution implicates a further intra-circuit split concerning the standard of review for mixed questions of law and fact, including whether standards for reviewing judicial decisions are applicable in the administrative context. Second, Judge Graber's proposed resolution of these intra-circuit conflicts does not fit well with the terms of the Immigration and Nationality Act (INA), which states only that the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary, but does not say that any other determinations are subject to this highly deferential standard of review. Third, resolution of these intra-circuit conflicts may also require considering how traditional administrative law principles bear on the question. For example, failing properly to distinguish between the Board's legal holdings and its factual conclusions obscures the question of what role, if any, principles of *Chevron* deference should play in this area. Moreover, although some of this circuit's cases have assumed that the traditional "substantial evidence" principles of administrative review require that the court review mixed questions of law and fact only for substantial evidence, this also raises the possibility that perhaps the court should apply a different form of "substantial evidence" review from the specific one that the INA expressly establishes for findings of fact. Fourth, treating the question of whether certain undisputed harms rise to the level of past persecution as a factual finding, subject to the INA's highly deferential standard of review, seems hard to square with the agency's own view of the matter, where the Board has squarely held that the clearly erroneous standard governing

factual findings does not apply to the application of legal standards, such as whether the facts established by an alien amount to past persecution or a well-founded fear of persecution.

Judge Collins wrote that the level of internal inconsistency and intellectual confusion in this circuit's caselaw has become so great that only the en banc court can straighten it out (unless the Supreme Court decides to address the existing circuit split). Judge Collins suggested that the en banc court should take up these issues in an appropriate case in which the standard of review would make a difference. However, because the standard of review would not affect the outcome in this case, Judge Collins wrote that this is not that case.

Concurring in part and dissenting in part, Judge Choe-Groves agreed with the majority's denial of Fon's request for CAT relief. However, because in her view substantial evidence supported the Board's denial of Fon's applications for asylum and withholding of removal, Judge Choe-Graves dissented from the remainder of the majority's opinion granting the petition in part and remanding to the Board.

**COUNSEL**

Danielle Beach-Oswald, Beach-Oswald Immigration Law Associates PC, Washington, D.C., for Petitioner.

Brian Boynton, Assistant Attorney General; Cindy S. Ferrier, Assistant Director; Sarai M. Aldana, Trial Attorney; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

GRABER, Circuit Judge:

Petitioner Stephen Tamufor Fon, a native and citizen of the United Republic of Cameroon, seeks review of the Board of Immigration Appeals' ("BIA") denial of his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). The BIA denied asylum and withholding of removal on the grounds that Petitioner had (a) failed to demonstrate past persecution and (b) failed to prove a nexus between the feared harm and a protected ground. We conclude that the record compels a finding of past persecution and that the agency's flawed reasoning as to nexus leaves us unable to conduct a meaningful review of that determination. We therefore grant the petition in part and remand for further proceedings as to asylum and withholding of removal. But substantial evidence supports the agency's denial of relief under CAT, so we deny the petition in part.

BACKGROUND

Cameroon contains both an English-speaking region and a French-speaking region. In October 2016, activists in the English-speaking region campaigned to expand the use of the English language in schools and courtrooms. The campaign turned violent and, when separatist fighters declared the English-speaking region's independence, the violence escalated into an ongoing war with the government of Cameroon. According to the 2018 Country Report from the United States Department of State, both sides have committed human rights abuses, including torture, rape, kidnappings, and indiscriminate killings of civilians.

Petitioner lived in Cameroon's English-speaking region. He worked as a laboratory assistant at a local hospital, and part of his work included cleaning patients' wounds. In December 2018, the hospital treated a patient who Petitioner suspected was a separatist fighter. While Petitioner tended to the wounds, four soldiers from the Cameroonian military "bashed into the ward" and "seized" the patient. Two soldiers took the patient away. The remaining two soldiers shouted at Petitioner and threatened to kill him if they caught him treating separatist fighters again. They then punched Petitioner and attacked him with a knife, leaving him with a three-inch scar on his left side.

Petitioner never returned to work at the hospital. But he continued to treat separatist fighters in his home. On two occasions, three separatist fighters knocked on Petitioner's door in the middle of the night, seeking medical treatment. Petitioner treated them. In January 2019, Petitioner's neighbor told him that Cameroonian soldiers "had come looking for" him and had ransacked his home. Assuming that the soldiers had "credible information" that "I had treated people at my place," and mindful of the earlier threat at the hospital, Petitioner hid at his friend's house. He returned home once to collect his things, but he otherwise lived with his friend until he left Cameroon in February 2019.

Six months later, in August 2019, Petitioner arrived in the United States. He applied for asylum, withholding of removal, and relief under CAT. In January 2020, an immigration judge ("IJ") expressly found him credible but denied all three applications. The BIA affirmed the denials, and this petition ensued.

## DISCUSSION

We address, in turn, the BIA's denial of asylum, withholding of removal, and relief under CAT.

### A. *Asylum*

To qualify for asylum, Petitioner must demonstrate that he "is unable or unwilling" to return to Cameroon "because of persecution or a well-founded fear of persecution on account of . . . [his] political opinion." 8 U.S.C. § 1101(a)(42)(A). If Petitioner demonstrates past persecution, "then fear of future persecution is presumed." *Deloso v. Ashcroft*, 393 F.3d 858, 863 (9th Cir. 2005). Here, the BIA concluded that Petitioner did not suffer past persecution and, without a presumption of future persecution, had not established a well-founded fear of future persecution. The BIA also held that Petitioner failed to show a nexus between his feared harm and a protected ground. *See, e.g.*, *Navas v. I.N.S.*, 217 F.3d 646, 656 (9th Cir. 2000) (explaining that an asylum applicant must show harm "that is 'on account of' one of the statutorily-protected grounds"). We address below the agency's findings pertaining to past persecution and nexus.

### 1. *Past Persecution*

To establish past persecution, Petitioner must show past harm of a severity "that rise[s] to the level of persecution[.]" *Id.* The BIA rejected Petitioner's argument that the severity of the harms that he experienced rose to the level of persecution. We "review for substantial evidence the BIA's particular determination that a petitioner's past harm 'do[es] not amount to past persecution.'" *Sharma v. Garland*,

9 F.4th 1052, 1060 (9th Cir. 2021) (alteration in original) (citation omitted).[1]

"This circuit has defined persecution as the infliction of suffering or harm upon those who differ (in race, religion[,] or political opinion) in a way regarded as offensive." *Korablina v. I.N.S.*, 158 F.3d 1038, 1043 (9th Cir. 1998) (internal quotation marks omitted). But "persecution is an extreme concept that does not include every sort of treatment our society regards as offensive." *Ghaly v. I.N.S.*, 58 F.3d 1425, 1431 (9th Cir. 1995) (citation omitted). Accordingly, "some circumstances that cause petitioners physical discomfort or loss of liberty do not qualify as persecution, despite the fact that such conditions have caused the petitioners some harm." *Mihalev v. Ashcroft*, 388 F.3d 722, 729 (9th Cir. 2004).

"[A] good starting point for determining whether substantial evidence supports the BIA's resolution of the issue" are the seven non-exhaustive factors identified in *Sharma*. *Sharma*, 9 F.4th at 1063. Although those factors are not determinative, they "often arise in these types of cases" and they "guide our analysis." *Id.* at 1061.

Three of those factors are present here: physical injury, specific threats, and evidence of the country's political and societal turmoil. *Id.* at 1061–63. Soldiers stabbed Petitioner in the stomach, causing him to bleed enough that he required stitches, and leaving a three-inch scar. Petitioner testified

---

[1] Because we would reach the same conclusion under any standard of review, we need not address whether a less deferential standard should pertain. *See Xue v. Lynch*, 846 F.3d 1099, 1104–06 & n.11 (10th Cir. 2017) (noting a circuit split as to whether substantial evidence review or de novo review applies to the question whether particular facts rise to the level of persecution).

that the soldiers threatened him that, "[i]f they catch me treating [separatist fighters], they will treat – they will kill me." In his written application, Petitioner stated that the soldiers "warned me if caught again, I will be killed."[2] Over the next few weeks, Petitioner treated more separatist fighters at his house. Soldiers then came to his home, did not find him, and ransacked the home. Finally, undisputed evidence describes the English-speaking region of Cameroon as mired in a "crisis" that "developed into an armed conflict," which has triggered "serious human rights violations and abuses by" both sides.

We compare those facts to those in our recent decision in *Aden v. Wilkinson*, 989 F.3d 1073 (9th Cir. 2021). There, members of Al-Shabaab, a group in Somalia, raided a movie theater owned by the petitioner's brother. *Id.* at 1083. They beat the petitioner "and cudgeled him on the head with the butt of a rifle, causing him to bleed profusely." *Id.* To ensure that the theater remained closed, they stole equipment from the theater. *Id.* And, two weeks later, the petitioner's brother received a phone call from Al-Shabaab with a death threat aimed at the petitioner. *Id.* The petitioner never returned to his job at the theater, remained in hiding, and fled Somalia within two months. *Id.* We emphasized that, "[i]n addition to physically beating [the petitioner], members of Al-Shabaab kept tabs on him by contacting his brother and warn[ing] they would kill [the petitioner] and his brother if

---

[2] The BIA commented that Petitioner "characteriz[ed] the soldiers' threats as a joke." The BIA clearly misread Petitioner's testimony. Petitioner testified in both his oral and written testimony that the soldiers "made a joke about me playing Jesus Christ by trying to save the patient." The joke was not the threat made by the soldier; rather, the soldier mocked Petitioner as purportedly thinking that he was a messianic figure. Petitioner plainly took the threat seriously and not as a joke. After the soldiers came to his house, he abandoned his home and fled the country.

they continued to disobey Al-Shabaab's command." *Id.* Finally, the country-conditions evidence confirmed that Al-Shabaab remained a major force in the country and a danger to many. *Id.* at 1084. We concluded that, "[t]ogether, this evidence compels the conclusion that [the petitioner] suffered persecution while in Somalia." *Id.*

We see no meaningful distinction between the extent of harm in *Aden* and the extent of harm suffered by Petitioner. Here, as in *Aden*, Petitioner experienced a single episode of bloody physical violence, with Petitioner's assault resulting in a visible scar. Here, as in *Aden*, the death threat was connected to the physical harm. And here, as in *Aden*, after receiving the death threat, Petitioner never returned to work and fled the country instead. If anything, Petitioner may have suffered greater harm than did the petitioner in *Aden*, because the knife wound in his abdomen required medical treatment, whereas the beating in *Aden* did not. And the soldiers followed up on their death threat to Petitioner, whereas Al-Shabaab did not.

To be sure, as the dissent notes, the effect of the death threat in *Aden* differs from the effect here. There, the "chain of events reveals that Al-Shabaab intended to coerce Aden to submit to its new political and religious order, and used offensive strategies—beatings, destruction of property, and death threats—to achieve this goal." *Id.* By contrast, here, the strategies "did not coerce Fon into abandoning his lawful beliefs[.]" Dissent at p. 33. But that distinction misses the mark. "What matters in assessing the sufficiency of the threat to establish persecution[] is whether the group making the threat has the will or the ability to carry it out—not whether it is, in fact, carried out." *Aden*, 989 F.3d at 1083 (internal quotation marks omitted). Here, as in *Aden*, the persecutors harmed Petitioner physically and threatened

him.  The persecutors showed that they had the will or the ability to carry out their death threat by visiting Petitioner's home and ransacking it.  Thus, the combination of physical harm and threat here sufficed to establish persecution.  *See id.* at 1082 ("[W]hen the incidents have involved physical harm plus something more, such as credible death threats, we have not hesitated to conclude that the petitioner suffered persecution." (emphasis omitted)).  Considering the facts here in the context of the country-conditions evidence, we conclude that the record compels the conclusion that Petitioner suffered past persecution.

Our other decisions are not to the contrary.  For example, in *Hoxha v. Ashcroft*, 319 F.3d 1179, 1181 (9th Cir. 2003), the petitioner suffered a one-time beating and experienced threats.  In rejecting Petitioner's argument that the record compelled a finding of past persecution, we emphasized that the single incident of physical violence "was not connected with any particular threat" and that there was "no evidence that the attackers knew who [the petitioner] was or that they showed any continuing interest in him."  *Id.* at 1182.  By contrast, here, a connection exists between the physical harm and the death threat because the soldiers made the threat while they stabbed Petitioner.  In addition, because the soldiers later came to Petitioner's home and looked for him there, the record contains further "evidence that the attackers knew who [the petitioner] was" and that they showed "continuing interest in him."  *Id.*; *see also Gu v. Gonzales*, 454 F.3d 1014, 1019–21 (9th Cir. 2006) (holding that a one-time beating did not compel a finding of past persecution); *Prasad v. I.N.S.*, 47 F.3d 336, 339–40 (9th Cir. 1995) (holding that a one-time beating plus another incident that caused damage to the petitioner's home did not compel a finding of past persecution).

In sum, the incidents that Petitioner suffered compel a finding that Petitioner experienced past persecution.

### 2. *Nexus*

To prevail on an asylum claim, an applicant also must demonstrate that the persecution was "on account of" a statutorily protected ground. *Parussimova v. Mukasey*, 555 F.3d 734, 739 (9th Cir. 2009). To meet this "nexus" requirement, an applicant must show that the protected ground was "at least one central reason" why the applicant was persecuted. 8 U.S.C. § 1158(b)(1)(B)(i). "[A] motive is a 'central reason' if the persecutor would not have harmed the applicant if such motive did not exist." *Parussimova*, 555 F.3d at 741.

Here, the BIA wrote in full: "Contrary to his contentions on appeal, [Petitioner] did not establish any nexus between his mistreatment and a protected ground, including his status as an Anglophone or an imputed political opinion contrary to the government." The BIA provided no further explanation, but it cited the IJ's discussion of this point. The BIA's lack of analysis, along with the citation to the IJ's opinion, "suggests that the BIA gave significant weight to the IJ's findings." *Avetova-Elisseva v. I.N.S.*, 213 F.3d 1192, 1197 (9th Cir. 2000). Thus, we may "look to the IJ's oral decision as a guide to what lay behind the BIA's conclusion." *Id.*

The IJ addressed Petitioner's "nexus" argument that, because he was an Anglophone, he would be perceived as "working with the opposition group" and that, therefore, "he has an imputed political opinion." The IJ rejected Petitioner's "nexus" arguments for two reasons: because Petitioner had "not provided any declarations from coworkers or family members regarding what happened to

him in Cameroon" and because he had not testified as to "what happened to his coworker that was helping him with this individual who was wounded."

The first reason was invalid. The IJ could not rely on the absence of corroborative evidence to reject a finding of nexus without having given Petitioner advance notice of what additional evidence was required and an opportunity to produce it or to explain why it was not available. *Bhattarai v. Lynch*, 835 F.3d 1037, 1042–43 (9th Cir. 2016) (citing *Ren v. Holder*, 648 F.3d 1079, 1093 (9th Cir. 2011)). Because that did not occur here, "we must grant the petition and remand." *Id.* at 1043.

The IJ's second reason is vague. Petitioner argued that the Cameroonian soldiers perceived him as working with the opposition group because he personally had provided medical treatment to separatist fighters. The IJ's second reason is not directly responsive to that argument. It also is not clear whether this reason rested on the flawed findings of fact concerning past persecution or whether this reason (like the first one) faulted Petitioner for not providing corroborative evidence. In light of these ambiguities, we cannot know whether there are valid grounds on which the BIA rejected Petitioner's nexus argument. "Without knowing the basis of the [BIA]'s decision, we cannot conduct a meaningful review. We therefore remand to the BIA for a clear explanation." *Delgado v. Holder*, 648 F.3d 1095, 1108 (9th Cir. 2011) (en banc).

In sum, a remand is required.

B. *Withholding of Removal*

The BIA denied withholding of removal for the same reasons it denied asylum—lack of past persecution and lack

of nexus. We therefore grant the petition as to the claim for withholding of removal and remand for further proceedings as to this form of relief.

## C. *CAT Relief*

Substantial evidence supports the BIA's determination that Petitioner failed to show that it is "more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Petitioner did not suffer past torture, and the record contains no evidence of individualized future risk of torture. We therefore deny the petition as to CAT relief.

**PETITION GRANTED IN PART, DENIED IN PART, AND REMANDED. Each party shall bear its own costs on appeal.**

GRABER, Circuit Judge, concurring:

I write separately to discuss our standard of review in cases of this kind. As noted in the opinion, there is a circuit split concerning the proper standard to use when we review the BIA's determination that a particular set of facts does or does not rise to the level of persecution. Our circuit has found a middle way by recognizing that this is a mixed question of law and fact.

In general, "[p]etitions for review from BIA decisions in asylum cases are reviewed under the substantial evidence standard." *Chand v. I.N.S.*, 222 F.3d 1066, 1073 (9th Cir. 2000). Under this standard, "[t]he [agency]'s decision must be affirmed unless the petitioner can establish 'that the evidence he presented was so compelling that no reasonable

factfinder could fail to find [eligibility for asylum]." *Pal v. I.N.S.*, 204 F.3d 935, 937 n.2 (9th Cir. 2000) (third alteration in original) (quoting *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483–84 (1992)). "This strict standard bars a reviewing court from independently weighing the evidence and holding that the petitioner is eligible for asylum, except in cases where compelling evidence is shown." *Kotasz v. I.N.S.*, 31 F.3d 847, 851 (9th Cir. 1994).

Our cases contain, at first glance, an apparent inconsistency. In scores of cases, both published and unpublished, we have held that we "review for substantial evidence the BIA's particular determination that a petitioner's past harm 'do[es] not amount to past persecution.'" *Sharma v. Garland*, 9 F.4th 1052, 1061 (9th Cir. 2021) (alteration in original) (citation omitted).[1] But in two cases, we held that we review de novo "[w]hether particular acts constitute persecution for asylum purposes." *Kaur v. Wilkinson*, 986 F.3d 1216, 1221 (9th Cir. 2021); *accord Boer-Sedano v. Gonzales*, 418 F.3d 1082, 1088 (9th Cir. 2005). In my view, no true inconsistency exists.

Whether facts meet a legal standard presents a mixed question of law and fact. *See U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Village at Lakeridge, LLC,*

---

[1] *Accord Villegas Sanchez v. Garland*, 990 F.3d 1173, 1179 (9th Cir. 2021); *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028–29 (9th Cir. 2019); *Wakkary v. Holder*, 558 F.3d 1049, 1060 (9th Cir. 2009); *Karapetyan v. Mukasey*, 543 F.3d 1118, 1124–25 (9th Cir. 2008), *superseded by statute on other grounds as stated in Owino v. Holder,* 575 F.3d 956, 958 (9th Cir.2009) (per curiam); *Gu v. Gonzales*, 454 F.3d 1014, 1018–19 (9th Cir. 2006); *Mansour v. Ashcroft*, 390 F.3d 667, 672 (9th Cir. 2004); *Mihalev v. Ashcroft*, 388 F.3d 722, 726, 730 (9th Cir. 2004); *Singh*, 134 F.3d at 967–69; *Prasad v. I.N.S.*, 47 F.3d 336, 339–40 (9th Cir. 1995).

138 S. Ct. 960, 966 (2018) (holding that "whether the historical facts found satisfy the legal test" presents a "mixed question of law and fact" (internal quotation marks omitted)). "Mixed questions are not all alike." *Id.* at 967. Which standard we apply "all depends—on whether answering [the mixed question] entails primarily legal or factual work." *Id.* If answering the mixed question is primarily a legal exercise, then we review de novo. *See Cordoba v. Holder*, 726 F.3d 1106, 1113 (9th Cir. 2013) ("[W]e review *de novo* both purely legal questions and mixed questions of law and fact requiring us to exercise judgment about legal principles." (quoting *Mendoza-Pablo v. Holder*, 667 F.3d 1308, 1312 (9th Cir. 2012))). But if answering the mixed question is primarily factual, then we review with deference to the fact-finder. *See also Cha Liang v. Att'y Gen.*, 15 F.4th 623, 626–30 (3rd Cir. 2021) (Jordan, J., concurring) (opining that past persecution is a mixed question of law and fact).

Usually, determining whether an applicant's harm crosses the persecution threshold involves very little legal work. *See, e.g.*, *Singh v. I.N.S.*, 134 F.3d 962, 967 (9th Cir. 1998) ("This inquiry is heavily fact-dependent . . . ."); *Cordon-Garcia v. I.N.S.*, 204 F.3d 985, 991 (9th Cir. 2000) ("The determination that actions rise to the level of persecution is very fact-dependent . . . ."). In those circumstances, our task is to measure the severity of the alleged harms that the applicant has suffered, and then, "looking at the cumulative effect of all the incidents[,] . . . compar[e] the facts of [the p]etitioner's case with those of similar cases." *Singh*, 134 F.3d at 967–68. In other words, we "take[] a raft of case-specific historical facts, consider[] them as a whole, balance[] them one against another—all to make a determination" as to whether the facts in our case compare favorably to the facts in other cases. *Village at*

*Lakeridge, LLC*, 138 S. Ct. at 968 (footnote omitted).  "That is about as factual sounding as any mixed question gets."  *Id.* For those reasons, generally we "review for substantial evidence the BIA's particular determination that a petitioner's past harm does not amount to past persecution." *Sharma*, 9 F.4th at 1060 (internal quotation marks omitted).

In rare cases, though, answering the mixed question entails very little factual work.  For example, in *Kaur*, 986 F.3d at 1219, a group of men attempted to gang-rape the petitioner.  The petitioner sought asylum, but the BIA rejected her claim, concluding that "the attempted gang rape could not rise to the level of persecution unless [the petitioner] produced evidence of treatment for psychological harm or further specific testimony regarding ongoing issues stemming from the attack."  *Id.* at 1221, 1222 (internal quotation marks omitted).  On de novo review, we rejected the agency's evidentiary rule.  *Id.* at 1222.  But, unlike in other persecution cases, we did not compare the factual severity of the attempted rape of petitioner with similar facts in other cases.  Instead, we analogized the nature of attempted rape to the "highly offensive" nature of rape itself. *See id.* at 1224 ("Attempted rape, like rape itself, carries the hallmarks of persecutory conduct.").  And we concluded that the BIA erred as a matter of law "by diminishing this serious sexual violence and insisting that [the petitioner] produce evidence of additional or ongoing harms."  *Id.* at 1227.

Similarly, in *Boer-Sedano*, our analysis centered on the legal nature of sexual assault.  418 F.3d at 1088 ("We have held that sexual assault, including forced oral sex, may constitute persecution.  Therefore, there can be no doubt that the nine sex acts that [the petitioner] was forced to perform rise to the level of persecution." (internal citation omitted)). *Boer-Sedano* cited *Hernandez-Montiel v. I.N.S.*, 225 F.3d

1084 (9th Cir. 2000), *overruled on other grounds by Thomas v. Gonzales*, 409 F.3d 1177 (9th Cir. 2005), *vacated*, 547 U.S. 183 (2006), for the proposition that de novo review was appropriate. *Hernandez-Montiel* held that the BIA had erred as a matter of law by ruling that sexual assault by police officers did not count as persecution. *Id.* at 1097–98. *Hernandez-Montiel*, in turn, cited *Pitcherskaia v. I.N.S.*, 118 F.3d 641, 646 (9th Cir. 1997), which reviewed de novo the meaning of the *statutory* term "persecution" and held that an intent to punish the petitioner is not a necessary element. *Pitcherskaia* cited *Fisher v. I.N.S.*, 79 F.3d 955, 961 (9th Cir. 1996) (en banc), which reviewed the BIA's legal interpretations of the immigration statutes de novo but reviewed for substantial evidence the BIA's determination that the petitioner failed to establish that she suffered past persecution. In other words, if one follows the entire trail of citations, the originating precedent, *Fisher*, reviewed *for substantial evidence* the BIA's ruling that the petitioner had failed to establish past persecution. Thus, the provenance of *Boer-Sedano*'s method of analysis is questionable.

Regardless of that transformation, though, *Boer-Sedano*, like *Kaur*, illustrates the unusual circumstance in which the focal point of the analysis of a mixed question was not the *factual* nature of the specific harm that the petitioner had suffered, but rather the *legal* significance of that kind of harm. In *Kaur*, we also analyzed the *legal* nature of what additional evidence the BIA could demand which, similarly, is not a factual issue. Because those analyses pertained to "developing auxiliary legal principles of use in other cases," *Village at Lakeridge, LLC*, 138 S. Ct. at 967, we reviewed de novo the mixed question whether the general category of harm qualifies to meet the persecution threshold.

The pertinent issue in this case is primarily factual, not legal. No one disputes that the general forms of harm that Petitioner experienced—a stabbing, the ransacking of a home, and credible death threats—can amount to persecution. Instead, the parties dispute whether the particular events that Petitioner experienced were severe enough, factually, to rise to the level of past persecution. We review that determination for substantial evidence. *Sharma*, 9 F.4th at 1061.

In sum, our circuit's law is consistent. Moreover, our precedent is, wisely, more nuanced than that of the circuits that have chosen substantial-evidence review in all cases or de novo review in all cases. That said, I share the view expressed in Judge Collins's concurrence that Supreme Court guidance on this important, recurring topic, on which the circuits have taken inconsistent positions, would be welcome.

---

COLLINS, Circuit Judge, concurring:

I concur in the panel opinion, which correctly holds that "the record compels the conclusion that Petitioner suffered past persecution." *See* Opin. at 13. I am unaware of any case in which we or any other circuit court has held that a stabbing—much less one with a 2–3-inch scar that required stitches and a hospital stay—does *not* entail a level of physical abuse sufficient to qualify as "persecution."[1]

---

[1] The dissent ignores the deferential standard of review that applies to the agency's *factual* findings when it downplays the severity of Petitioner's injury based on the dissent's own assessment of the record evidence concerning the nature of that injury. In his ruling, the

Indeed, as the opinion notes, we have held that comparable violence constitutes persecution. *See Hoque v. Ashcroft*, 367 F.3d 1190, 1193, 1198 (9th Cir. 2004) (petitioner who was abducted, beaten with sticks, and stabbed established past persecution); *see also Kaur v. Wilkinson*, 986 F.3d 1216, 1222 (9th Cir. 2021) (noting that we have generally "concluded that physical violence is persecution") (citations and internal quotation marks omitted); *see also Li v. Holder*, 559 F.3d 1096, 1107 (9th Cir. 2009) ("It is well established that physical violence is persecution."); *Chand v. INS*, 222 F.3d 1066, 1073 (9th Cir. 2000) ("Physical harm has consistently been treated as persecution."). Accordingly, even if the question whether Petitioner's harms rose to the level of persecution is reviewed under the deferential standard of substantial-evidence review set forth in § 242(b)(4)(B) of the Immigration and Nationality Act ("INA"), *see* 8 U.S.C. § 1252(b)(4)(B), the petition here must be granted. I therefore agree with the opinion's conclusion that we need not decide whether that is in fact the correct standard of review.

I write separately only to respond to Judge Graber's concurrence, which argues that substantial evidence is the

Immigration Judge ("IJ") credited Petitioner's testimony and found that he "was *stabbed* with a knife on his left midsection" (emphasis added). The IJ made that finding after personally examining the scar in court and explaining that it "appeared to be a two-and-a-half to three-inch scar on the left side of his midsection." The dissent suggests that the better reading of the record is that Petitioner was only "cut" and not stabbed, *see* Dissent at 34, but we lack the authority to set aside the IJ's finding that Petitioner was stabbed. *See* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."). Moreover, given the size of the scar, and the need for stitches and a hospital stay, the dissent's characterization of the resulting wound as a "minor physical injury" is plainly incorrect. *See* Dissent at 33.

correct standard of review for assessing whether a petitioner's abuse rises to the level of past persecution, except in "rare cases" in "which the focal point of the analysis of a mixed question was not the *factual* nature of the specific harm that the petitioner had suffered, but rather the *legal* significance of that kind of harm."  *See* J. Graber Concurrence at 19–20.  Judge Graber makes a number of good points in favor of that position, but I think that the question is actually quite a bit more complicated than her concurrence suggests.  At some point, it will fall to the en banc court, or perhaps the Supreme Court, to straighten out this area of the law.

As an initial matter, our caselaw on this specific issue is internally inconsistent.  In *Kaur*, we stated that "[o]nly the BIA's findings of fact are reviewed for substantial evidence" and that, consequently, "[w]hether particular acts constitute persecution for asylum purposes is a legal question reviewed de novo."  986 F.3d at 1221 (simplified).  We made the same observation in *Boer-Sedano v. Gonzales*, 418 F.3d 1082 (9th Cir. 2005), even using italics to underscore the point: "*Whether particular acts constitute persecution for asylum* purposes is a legal question, which we review de novo."  *Id*. at 1088.  In support of that view, *Boer-Sedano* relied on *Hernandez-Montiel v. INS*, 225 F.3d 1084 (9th Cir. 2000), where we stated that de novo review applies to "the legal question of the meaning of persecution."  *Id*. at 1097 (citation omitted).[2]  By contrast, in a different line of decisions, we have endorsed the exact opposite view that, even if the underlying facts are undisputed, the question

---

[2] *Hernandez-Montiel* was overruled on other grounds in *Thomas v. Gonzales*, 409 F.3d 1177 (9th Cir. 2005) (en banc), and *Thomas* was in turn vacated and remanded on other grounds, *see Gonzales v. Thomas*, 547 U.S. 183 (2006).

whether the petitioner's harms "rise to the level of past persecution" is reviewed only for substantial evidence. *See Villegas Sanchez v. Garland*, 990 F.3d 1173, 1179 (9th Cir. 2021) (citing *Prasad v. INS*, 47 F.3d 336, 339 (9th Cir. 1995)); *see also*, *e.g.*, *Sharma v. Garland*, 9 F.4th 1052, 1060 (9th Cir. 2021) (citing *Villegas Sanchez* and *Prasad*).

Judge Graber argues that these conflicting lines of cases can be reconciled by viewing them as appropriately applying different standards of review to this "mixed question of law and fact." *See* J. Graber Concurrence at 17–20. Relying on the standards that the Supreme Court has set forth for reviewing the findings of lower courts, *see U.S. Bank N.A. ex rel. CWCapital Asset Management LLC v. Village of Lakeridge, LLC*, 138 S. Ct. 960 (2018), Judge Graber argues that if the question whether a petitioner's past mistreatment rises to the level of "persecution" is one that "involves very little legal work," then it should be reviewed only for substantial evidence, but if it "entails very little factual work," then it should be reviewed de novo. *See* J. Graber Concurrence at 18–19. There is some force to this position, but it overlooks several significant complicating considerations.

First, Judge Graber's proposed solution implicates a further intra-circuit split. We have said many times that "[w]e review de novo the BIA's determinations on questions of law *and mixed questions of law and fact.*" *Conde Quevedo v. Barr*, 947 F.3d 1238, 1241 (9th Cir. 2020) (emphasis added); *see also Medina-Rodriguez v. Barr*, 979 F.3d 738, 744 (9th Cir. 2020) (same); *Cordoba v. Barr*, 962 F.3d 479, 481–82 (9th Cir. 2020) ("We review the agency's factual findings for substantial evidence, but review '*de novo* both purely legal questions and mixed questions of law and fact requiring us to exercise judgment about legal

principles.'") (citation omitted); *Cordoba v. Holder*, 726 F.3d 1106, 1113 (9th Cir. 2013) ("We review the BIA's purely factual determinations for substantial evidence. However, we review *de novo* both purely legal questions and mixed questions of law and fact requiring us to exercise judgment about legal principles.") (citation omitted); *Khunaverdiants v. Mukasey*, 548 F.3d 760, 765–66 (9th Cir. 2008) (after identifying issue as a "mixed question of law and fact," court held that "[w]e review the agency's application of legal standards de novo").

But, once again, we have also said the exact opposite in a different set of cases. *See Haile v. Holder*, 658 F.3d 1122, 1125 (9th Cir. 2011) ("Questions of law are reviewed de novo. We review factual findings and determinations of mixed questions of law and fact for substantial evidence.") (citations omitted); *Zumel v. Lynch*, 803 F.3d 463, 471 (9th Cir. 2015) ("'We review agency factual findings and determinations of mixed questions of law and fact for substantial evidence,' and legal questions de novo.") (citation omitted); *Khan v. Holder*, 584 F.3d 773, 776 (9th Cir. 2009) ("We review agency factual findings and determinations of mixed questions of law and fact for substantial evidence."). This additional intra-circuit conflict only underscores the need for en banc review, in an appropriate case, to restore coherence to our caselaw in this area.

Judge Graber apparently believes that *U.S. Bank* already resolves these intra-circuit conflicts, but that assumes that *U.S. Bank*'s standards for reviewing *judicial* findings are directly applicable to this administrative context. The Supreme Court itself has not yet taken that step, however. *See Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062 (2020) (holding that "the application of law to undisputed facts"

qualifies as a "question of law" that courts may review under INA § 242(a)(2)(D), but expressly declining to address whether *U.S. Bank* applies to such a "mixed question of law and fact," noting that the cases before it "present no such question involving the standard of review") (citation omitted).

More importantly, Judge Graber ignores the gloss that the Supreme Court itself put on *U.S. Bank* in its subsequent decision in *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183 (2021). Addressing the standards for reviewing a mixed question of law and fact, the *Google* Court "explained that a reviewing court should try to break such a question into its separate factual and legal parts, reviewing each according to the appropriate legal standard. But *when a question can be reduced no further*, we have added that 'the standard of review for a mixed question all depends—on whether answering it entails primarily legal or factual work.'" *Id*. at 1199 (quoting *U.S. Bank*, 138 S. Ct. at 967) (emphasis added). The *U.S. Bank* rule that Judge Graber invokes thus applies only if the predicate question cannot first be broken down into "separate factual and legal parts." *Id*. As two judges of the Third Circuit have argued, this aspect of *Google* supports the view that the standard of review here is de novo, contrary to the view reached by Judge Graber's concurrence. *See Liang v. Attorney General*, 15 F.4th 623, 626–27 (3d Cir. 2021) (Jordan, J., joined by Ambro, J., concurring); *see also id*. at 629 (criticizing another Third Circuit case that appeared to endorse a position similar to the one Judge Graber adopts). They concluded that, once the factual and legal components are separated as *Google* requires, "the question of whether those events meet the legal definition of persecution is reviewed de novo because it is plainly an issue of law.'' *Id*. at 627 (simplified); *see also id*. (concluding that *Google* requires de novo review

because, "when it comes to the determination of past persecution, the factual and legal parts are separate and distinct").

Second, Judge Graber's proposed resolution of these intra-circuit conflicts does not fit well with the terms of the INA. In setting forth the standard of review we are to apply in deciding petitions for review in immigration cases, § 242(b)(4)(B) of the INA states only that "the administrative *findings of fact* are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (emphasis added). It does not say that any other determinations are subject to this highly deferential standard of review. "Congress is presumed to know the law," *see Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1189 (9th Cir. 2003), which has long distinguished between pure questions of law, mixed questions of law and fact, and factual findings, *see Pullman-Standard v. Swint*, 456 U.S. 273, 288–90 & n.19 (1982). But Congress chose only to subject "findings of fact" to this deferential standard of review.

Third, resolution of these intra-circuit conflicts may also require considering how "traditional administrative law principles" bear on the question. *Garland v. Ming Dai*, 141 S. Ct. 1669, 1679 (2021) (stating that, in addition to the specific rules set forth in the INA, "reviewing courts remain bound by traditional administrative law principles"). For example, failing properly to distinguish between the BIA's legal holdings and its factual conclusions obscures the question of what role, if any, principles of *Chevron* deference should play in this area. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (stating that "the BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms 'concrete meaning through a process of case-

by-case adjudication'") (citation omitted).  Moreover, some of our cases have assumed that the traditional "substantial evidence" principles of administrative review applied in *INS v. Elias-Zacarias*, 502 U.S. 478 (1992), require that we review "mixed questions of law and fact" only "for substantial evidence."  *See*, *e.g.*, *Khan*, 584 F.3d at 776.  That may or may not be correct, but it also raises the possibility that perhaps we should apply a different form of "substantial evidence" review from the specific one that the INA expressly establishes for "findings of fact."  *Cf. Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (holding that the "substantial evidence" review applicable in social security cases is distinct from the "compelled to conclude" standard of INA § 242(b)(4)(B)); *but cf. Elias-Zacarias*, 502 U.S. at 481 & n.1 (equating the Court's "compelled" standard—which had not yet been added to the INA—to traditional "substantial evidence" review generally).

Fourth, treating the question here—*i.e.*, whether certain undisputed harms rise to the level of past persecution—as a factual finding subject to § 242(b)(4)(B)'s highly deferential standard of review seems hard to square with the *agency's* own view of the matter.  In reviewing a decision of an IJ, the Board of Immigration Appeals ("BIA") operates under an analogous distinction between deferential review of factual findings and de novo review of legal conclusions.  The applicable regulations state that "[t]he Board will not engage in de novo review of findings of fact determined by an immigration judge.  Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous."  8 C.F.R. § 1003.1(d)(3)(i).  By contrast, the "Board may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges *de*

*novo*." *Id.* § 1003.1(d)(3)(ii). Notably, in applying these rules, the BIA has squarely held that "[t]he clearly erroneous standard therefore does not apply to the application of legal standards, *such as whether the facts established by an alien amount to past persecution* or a well-founded fear of persecution." *In re A–S–B–*, 24 I. & N. Dec. 493, 496–97 (BIA 2008) (simplified) (emphasis added), *overruled in part on other grounds by In re Z–Z–O–*, 26 I. & N. Dec. 586, 589–91 (BIA 2015).

As the Tenth Circuit has aptly noted, "[i]t is certainly odd, to say the least, for this court to review for substantial evidence a determination the BIA itself has concluded is legal in nature," and that "is especially true when the BIA's governing regulations forbid it from engaging in factfinding." *Xue v. Lynch*, 846 F.3d 1099, 1105 (10th Cir. 2017) (declining to decide the issue, because it had not properly been raised in the petition for review); *see also Liang*, 15 F.4th at 627 (Jordan, J., joined by Ambro, J., concurring) (noting that the BIA's treatment of the issue as a question of law supports applying de novo review in the court of appeals). Treating the question here as a "factual finding[]" subject to § 242(b)(4)(B) would effectively require us to say that what is concededly a question of law in the BIA somehow transmogrifies into a question of fact when the case leaves the BIA and comes before our court. That does not make much sense. The dissonance is all the more striking given that the courts of appeals are sometimes called upon to uphold and enforce the BIA's treatment of such questions as questions of law. *See*, *e.g.*, *Maldonado v. Barr*, 776 F. App'x 29, 30 (2d Cir. 2019) (holding that BIA properly applied de novo review in reversing IJ's conclusion that alien's mistreatment "rose to the level of persecution").

On top of all these considerations, there is a significant circuit split on this issue, as Judge Graber acknowledges in her concurrence. *See* J. Graber Concurrence at 16; *see also Xue*, 846 F.3d at 1105 n.11 ("The circuits are split as to the standard of review applicable to the question whether an undisputed set of facts constitute persecution.").

\*        \*        \*

As the foregoing discussion makes clear, our caselaw on this subject is a bit of a mess. It is not my purpose in this concurrence to take a position as to how these issues should ultimately be resolved. My point is that the level of internal inconsistency and intellectual confusion in our caselaw has become so great that only the en banc court can straighten it out (unless the Supreme Court decides to address the existing circuit split). Accordingly, in my view, the en banc court should take up these issues in an appropriate case in which the standard of review would make a difference. But given that the Petitioner here prevails even if we apply a more deferential standard of review to the agency's decision, this is not that case.

Subject to these observations, I concur in the panel opinion in this case.

___

CHOE-GROVES, Judge, concurring in part and dissenting in part:

I concur with the majority in denying Petitioner's request for relief under the Convention Against Torture ("CAT"). Because substantial evidence supports the Board of Immigration Appeals' ("BIA") denial of Petitioner's applications for asylum and withholding of removal, I

respectfully dissent from the remainder of the majority's opinion and decision to grant the petition in part and remand to the BIA.

To succeed on a claim for asylum, Petitioner must demonstrate that he is unable or unwilling to return to his home country because of past persecution or a well-founded fear of future persecution. *Garcia v. Wilkinson*, 988 F.3d 1136, 1142–43 (9th Cir. 2021). Petitioner must also demonstrate a nexus between the persecution and a statutorily protected ground: race, religion, nationality, membership in a particular group, or political opinion. *Id.* at 1143. The majority concludes that the record demonstrates that Petitioner suffered past persecution and that the BIA's analysis of whether a nexus exists between the alleged persecution and a protected ground was inadequate and flawed. I disagree that the record compels a conclusion that the harms alleged by Petitioner amount to persecution.

The majority disagrees whether this case should be reviewed de novo or under the substantial evidence standard, but both Judges Graber and Collins acknowledge that the caselaw on this issue does not provide a clear answer. *See* J. Graber Concurrence at 17; J. Collins Concurrence at 22–23. We review questions of law de novo and questions of fact for substantial evidence. *Bhattarai v. Lynch*, 835 F.3d 1037, 1042 (9th Cir. 2016). Most of our prior cases reviewing the BIA's decisions to grant or deny asylum fall into the latter of these categories. See, e.g., *Sharma v. Garland*, 9 F.4th 1052, 1060 (9th Cir. 2021); *Chand v. I.N.S.*, 222 F.3d 1066, 1073 (9th Cir. 2000); *Prasad v. I.N.S.*, 47 F.3d 336, 338–39 (9th Cir. 1995). I view the question before us as straightforward: do the harms suffered by Petitioner amount to past persecution? Because this is predominantly, if not fully, a question of fact, the BIA's asylum decision

should be reviewed for substantial evidence and affirmed unless the evidence compels the conclusion that the decision was incorrect. *Gu v. Gonzales*, 454 F.3d 1014, 1018 (9th Cir. 2006). This standard is highly deferential to the BIA. *Sharma*, 9 F.4th at 1060.

As the majority correctly notes, persecution is an "extreme concept" and not every circumstance that causes an asylum seeker pain or loss of liberty rises to the level of persecution. *Gu*, 454 F.3d at 1019; *Mihalev v. Ashcroft*, 388 F.3d 722, 728–29 (9th Cir. 2004). We consider Petitioner's allegations as a whole to determine whether the incidents cumulatively rise to the level of persecution. *Sharma*, 9 F.4th at 1061.

Petitioner suffered physical injury when he was assaulted by four members of the Cameroonian military while treating a separatist fighter at the hospital where he worked. He testified that he was punched several times and cut by a knife under his left rib, resulting in a two-and-a-half-inch scar. Petitioner was treated for his injuries immediately following the incident. During the assault, one of the soldiers threatened Petitioner that he would be killed if he continued to treat separatist fighters. A few weeks later, he learned from a neighbor that soldiers had visited and ransacked his home.

In analyzing whether Petitioner's allegations rise to the level of past persecution, the majority compares the facts of this case to those in our recent decision in *Aden v. Wilkinson*, 989 F.3d 1073 (9th Cir. 2021). Aden was a citizen of Somalia who lived in a town controlled by Al-Shabaab, a militant terrorist organization affiliated with Al-Qaeda. *Id.* at 1077. He worked in a theater owned by his brother that screened American and Hindi films. *Id.* On two occasions, members of Al-Shabaab visited the theater and demanded

that Aden's brother stop showing the films, which Al-Shabaab deemed "Satanic." *Id.* Aden's brother did not comply with the demand and Al-Shabaab members later raided the theater. *Id.* During the raid, Aden, his brother, and others present at the theater were beaten with sticks and the butt of a rifle and the equipment used to screen films was taken. *Id.* Aden was struck in the head, resulting in profuse bleeding. *Id.* Two weeks after the raid, while hiding with a family member, Aden's brother was contacted by members of Al-Shabaab who threatened to kill both brothers if they reopened the theater. *Id.* at 1077–78. Aden fled Somalia to South Africa and eventually arrived in the United States. *Id.* at 1078.

In reviewing the denial of Aden's applications for asylum and withholding of removal, a three-judge panel of this Court concluded that the single physical beating and subsequent death threat amounted to persecution because, when viewed in the light of the societal and political turmoil of Somalia, Al-Shabaab's continued interest in Aden left him with no choice other than to abandon his political and religious beliefs or flee. *Id.* at 1083–84.

Unlike Aden, Fon experienced a single threat accompanied by the minor physical injury of a stab wound. The threat did not coerce Fon into abandoning his lawful beliefs, and Fon's only subsequent interaction with the Cameroonian military was one instance of members of the military visiting his home when he was not present. Because of these distinctions, a reasonable factfinder would not be compelled to reach the same conclusion as in *Aden*.

In most cases, an isolated incident resulting in a physical injury does not rise to the level of persecution. *See Gu*, 454 F.3d at 1020–21 (finding no past persecution when petitioner was detained and beaten once); *Prasad*, 47 F.3d at 339–40

(upholding the BIA's determination that the petitioner suffered no past persecution from a single incident of being detained, interrogated, hit in his stomach, and kicked from behind). The circumstances in which we have found past persecution based on only a single incident of violence have generally involved severe injuries or other extreme acts of intimidation. *See Sharma*, 9 F.4th at 1061 ("[W]hen we have granted petitions for review because the record compelled a finding of past persecution, the petitioner often experienced serious physical violence, among other indicators of persecution."); *see also Hoque v. Ashcroft*, 367 F.3d 1190, 1193, 1198 (9th Cir. 2004) (finding past persecution when the petitioner had been kidnapped, taken to a camp, beaten with an iron rod and stick, stabbed, and abandoned unconscious on a street and required eight days of hospitalization); *Chanchavac v. I.N.S.*, 207 F.3d 584, 589–91 (9th Cir. 2000) (finding that petitioner suffered past persecution when he was severely beaten once and violent acts and murder had been committed against his family and neighbors).

The majority sees no meaningful distinction between the harm suffered by Petitioner and the harm suffered by Aden and notes that it is possible that Petitioner's injuries were more severe because they required medical treatment. Both men suffered a beating. Aden was struck by the butt of a gun, which caused him to bleed profusely but he did not receive medical treatment. *Aden*, 989 F.3d at 1077. The specific type of injury suffered by Petitioner is not clear from the record. Petitioner testified during his removal proceeding that the soldiers "cut me on my left side." He also referred to the injury as a cut in his declaration supporting his asylum application. Petitioner later described the injury as a stabbing in his appeal to the BIA and in his brief to the Court. Petitioner's brief in this proceeding does

not allege that his injury was life-threatening or required medical treatment beyond stitches and a single day of rest. The record does not compel a conclusion that Petitioner's injuries were more severe than those suffered by Aden.

Substantial evidence also supports the BIA's determination that the threat made against Petitioner by a Cameroonian soldier during the assault did not raise the injury to the level of persecution. The BIA construed Petitioner's testimony as characterizing the threat as a joke. The record suggests that Petitioner took the threat seriously enough to flee his home and country. Regardless of whether the threat was intended as a joke, the threat was not of the severity that we have previously found amounts to persecution. Death threats constitute past persecution only when "the threats are so menacing as to cause significant actual suffering or harm." *Lim v. I.N.S.*, 224 F.3d 929, 936 (9th Cir. 2000) (internal quotation omitted).

The Court in *Aden* found significant that the death threats made against Aden eliminated all choices other than to forsake his political and religious beliefs or flee. *Aden*, 989 F.3d at 1084. The record here does not suggest that the Cameroonian soldiers attempted to coerce Petitioner to abandon his lawful political or religious beliefs. In fact, Petitioner conceded during his removal proceeding that he does not consider himself to be an Anglophone Cameroonian.[1] The threats related to Petitioner providing medical aid to separatist fighters. In his declaration supporting his asylum application, Petitioner claimed that he was trained and sworn to offer healthcare services

---

[1] Petitioner's concession during the removal proceeding is inconsistent with his brief, in which he identifies himself as an Anglophone.

indiscriminately and that healthcare providers who did not provide treatment to suspected separatists risked intimidation and harassment from members of the community. In this case, the single threat made to Petitioner conditioned on whether he continued to treat separatist fighters was not based on his lawfully held beliefs and was not so extreme as to raise the harm to the level of past persecution. *See Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028–29 (9th Cir. 2019) (holding that two death threats did not compel a determination that petitioner had suffered past persecution); *cf. Smolniakova v. Gonzales*, 422 F.3d 1037, 1048–49 (9th Cir. 2005) (holding that repeated death threats following the murder of family friends, during an assault, and at the petitioner's home amounted to past persecution).

It is undisputed that Cameroon is in a condition of political and societal turmoil. Even considering the events alleged by Petitioner in this light, a reasonable factfinder is not compelled to find that the circumstances collectively amount to past persecution.

In the absence of past persecution, Petitioner must establish a well-founded fear of future persecution to succeed in an asylum claim. *Sharma*, 9 F.4th at 1065. "A well-founded fear of future persecution must be both subjectively genuine and objectively reasonable." *Rusak v. Holder*, 734 F.3d 894, 896 (9th Cir. 2013) (internal quotation omitted). The risk of persecution must be more than a random or generalized possibility and Petitioner must make a particularized showing that the risk to him is greater than the risk to other citizens. *Singh v. I.N.S.*, 134 F.3d 962, 967 (9th Cir. 1998).

In determining that Petitioner did not have an objective fear of future persecution if returned to Cameroon, the BIA offered no independent analysis but cited to the decision of

the immigration judge ("IJ"). Because the BIA did not provide a new analysis and relied upon the determination of the IJ, we consider the IJ's reasoning to have informed the conclusion of the BIA. *See Avetova-Elisseva v. I.N.S.*, 213 F.3d 1192, 1197 (9th Cir. 2000). The IJ concluded that while Petitioner had a subjective fear of persecution, he did not establish an objective fear of persecution. The IJ noted further that Petitioner testified that he was not a member of any organization in Cameroon and that his fears were based on a belief that he might be perceived as working with an opposition group.

Petitioner has not demonstrated that he continues to be of interest to the Cameroonian military or government and there is no indication in the record that officials have searched for Petitioner after the one visit to his home. Petitioner testified that he had no significant dealings with the military or government after December 2018. Although Petitioner fears that he might be targeted as an Anglophone, he conceded that he does not consider himself to be one. Considering these facts, a reasonable factfinder would not be compelled to conclude that Petitioner has a well-founded fear that he would be persecuted if returned to Cameroon. Because Petitioner has not demonstrated that he suffered past persecution or has a well-founded fear of future persecution, he is not eligible for asylum.

If Petitioner had suffered persecution, success on his asylum claim would also require a nexus between a statutorily protected ground and the alleged persecution. *Garcia*, 988 F.3d at 1143. The Petitioner's race, religion, nationality, membership in a social group, or political opinion must be a central reason for the suffered or feared harm. *Id.* The BIA concluded that Petitioner did not establish the requisite nexus. As with its determination on

Petitioner's well-founded fear of future persecution, the BIA relied on the determination of the IJ.

Petitioner argues that because he is an Anglophone (though admitting during his removal proceeding that he does not consider himself to be an Anglophone) and was observed giving aid to an Anglophone separatist fighter, that a political opinion of supporting the opposition group could be imputed to him. An asylum applicant can establish persecution based on an imputed political belief, even if the applicant does not personally hold the belief. *Garcia-Milan v. Holder*, 755 F.3d 1026, 1031 (9th Cir. 2014). Because this shifts the inquiry from the views of the applicant to those of the persecutor, the applicant must provide evidence of the persecutor's views. *Id.*

The IJ found that Petitioner had not established a nexus because he failed to offer declarations from coworkers and family members describing the events that occurred in Cameroon and did not testify as to what happened to the other hospital employees who assisted in treating the separatist fighter. The majority concludes that remand is required because Petitioner was not given a meaningful opportunity to provide necessary evidence and the IJ was ambiguous as to why evidence regarding Petitioner's coworkers was relevant to its determination. *See Bhattarai*, 835 F.3d at 1042–43; *Delgado v. Holder*, 648 F.3d 1095, 1107–08 (9th Cir. 2011) (en banc). Because Petitioner's failure to establish past persecution or a well-founded fear of future persecution would be dispositive for his asylum claim, remand to the BIA on the question of nexus is unnecessary. Because Petitioner does not meet the less-stringent standard for asylum, he also fails to meet the higher standard for withholding of removal. *Sharma*, 9 F.4th at 1066.

I agree with the majority's conclusion that substantial evidence supports the BIA's determination that Petitioner failed to qualify for protection under the CAT. Because I believe that substantial evidence also supports the BIA's determination that Petitioner did not suffer past persecution and does not have a well-founded fear of future persecution, I would deny the petition in its entirety and respectfully dissent.